# STATE OF MICHIGAN

# COURT OF APPEALS

PETER ARABO,

        Plaintiff-Appellant,

v

MICHIGAN GAMING CONTROL BOARD,

        Defendant-Appellee.

FOR PUBLICATION
May 5, 2015
9:05 a.m.

No. 318623
Oakland Circuit Court
LC No. 2013-133668-CZ

Before: BECKERING, P.J., and JANSEN and BOONSTRA, JJ.

BOONSTRA, J.

Plaintiff appeals by right the trial court's August 28, 2013 order granting summary disposition to defendant Michigan Gaming Control Board ("the Board"), and dismissing plaintiff's claims under the Freedom of Information Act ("FOIA"), MCL 15.231 *et seq*.[1] We affirm in part, reverse in part, and remand for further proceedings.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

This appeal arises out of plaintiff's request to the Board for public records under the FOIA. On February 15, 2013, plaintiff sent a letter by email to the Board's FOIA Coordinator,

---

[1] The FOIA was recently amended. See 2015 PA 563. The amendment adds a procedure for challenging fees under § 10 and provides for monetary damages and punitive damages, under certain situations, to be paid both to the public treasury and the requestor. The act takes effect July 1, 2015. Nothing about the amendatory act leads us to believe the Legislature intended the amendment to operate retroactively. We presume a statute operates prospectively unless the Legislature clearly intended retroactive application; this is "especially true if retroactive application of a statute would . . . attach a disability with respect to past transactions." *Frank W Lynch & Co v Flex Technologies, Inc*, 463 Mich 578, 583; 624 NW2d 180 (2001). We therefore consider plaintiff's appeal under the previous (and in fact, still in effect) version of the FOIA. *Id*. Further, the enactment of this amendment does not alter our conclusion that a cause of action exists for declaratory and injunctive relief, but not monetary damages, for violation of § 4 of the FOIA as it existed prior to the amendment, as discussed later in this opinion in Part II(C).

Latasha Cohen, making a formal request for information under the FOIA. Plaintiff's request sought information, writings, documents, or other public records regarding: (1) "which countermeasures have ever been in effect, or were in effect since 01/01/1996 to 02/15/2013, that authorized or authorizes MGM Grand Detroit, Greektown Casino & Hotel, and the Motorcity Casino to prevent card counters from profiting at the game of blackjack, and that is or was also approved by the Michigan [G]aming Control Board," and (2) "any rule(s) or law(s) by the Michigan Gaming Control Board that allows MGM Grand Detroit, Greektown Casino & Hotel, and the Motorcity Casino to exclude skillful players at the game of blackjack or any other game that has ever been in effect since 01/01/1996 to 02/15/2013." The Board received plaintiff's FOIA request on February 19, 2013.

On February 25, 2013, Cohen, the FOIA Coordinator, responded by letter to plaintiff, stating in relevant part:

You have requested information you describe as follows:

"... [I] request to view/copy, or upon further request receive certified copies of the requested documentation, as prescribed in M.C.L. 15.233 Sections 3(1)(2)(5) of the FOIA.

It is hereby requested that you disclose the following information, writing(s), document(s), or other public record(s), as indicated below according to Title 5 U.S.C. Sections 552(a)(3); M.C.L. 15.232(c)(e), and M.C.L. 15.269:

1. Which of the following countermeasures have ever been in effect, or were in effect since 01/01/1996 to 02/15/2013, that authorized or authorizes MGM Grand Detroit, Greektown Casino & Hotel, and the Motorcity Casino to prevent card counters from profiting at the game of blackjack, and that is or was also approved by the Michigan [G]aming Control Board. . . ."

MGCB grants your request for existing, non-exempt information in our possession that is relevant to your request.

Section 4(1) of the FOIA permits a public body to charge a fee for the necessary copying of documents and for the cost, search, retrieval, examination, review, and the deletion of exempt information, if any.

Due to the substantial volume of records that may be responsive to your request, the numerous hours required to process this request; and the unreasonably high cost to MGCB in the absence of charging a fee in this particular instance, MGCB has determined that it must seek reimbursement.

There are approximately 6,206 pages of information which might be relevant to your request. It will take approximately 103 hours to search, retrieve, examine, review, and redact exempt from non-exempt information from records described in your request. The following is a breakdown of the cost based on the respective

hourly rate of the lowest paid MGCB employee capable of performing the tasks necessary to commence the processing of your request:

| | | |
|---|---|---|
| 6,206 pages | 103 hours | |
| Department Analyst, Records Section | 103 hours @ 41.78 | $4,303.34 |
| | TOTAL | $4,303.34 |

This estimate does not include the actual copying and mailing costs. MGCB would determine necessary postage fees upon completion of your request.

If you wish to narrow or modify your request, notify us in writing. In the alternative, feel free to contact us by mail or telephone if you wish to discuss the scope of your current request.

Section 4(2) of the FOIA permits a public body to require a good faith deposit at the time a request is made which in this instance is $2,151.67. Payments are submitted in the form of a check or money order. . . .

* * *

Upon completion of processing the request, you will be notified in writing of the balance payable before records are disclosed. Additionally, you will be informed of exempt records, if any, with the specific statutory basis for the exemptions explained at that time.

On March 2, 2013, and in response to the Board's February 25, 2013 letter, plaintiff again sent a letter by email to Cohen, as well as to Richard S. Kalm, the Executive Director of the Board, requesting that the Board waive the fees to process his request. Plaintiff cited numerous reasons for his fee waiver request, including that the disclosure of the information would further the public interest and likely contribute to public understanding, that he planned to make the documents available to the public at the Michigan State University Law Library, that he intended to use the information for litigation, and that he was working on a campaign to ban casinos in Michigan.

On March 18, 2013, Karen Finch, the Board's Administrative Services Manager, notified plaintiff that the Board had denied his request for a waiver of the fees. Finch's letter stated in part:

The FOIA does not require the taxpayers to subsidize a requesting person's FOIA processing costs. The Board recognizes that the purpose of the FOIA is to promote access to government records in the most efficient and economical way possible. The Board's response to the instant FOIA request is entirely consistent with those purposes. The fees included for the processing of your request are the actual costs to the Board. The costs incurred include fees for the search, examination, review and the deletion and separation of exempt from nonexempt material because a member of the Board's staff will be taken away from his/her normal duties for a significant period of time in order to process your request.

-3-

Further, section 4(3) of the FOIA, MCL 15.234(3), mandates that "[f]ees shall be uniform and not dependent on the identity of the requesting person." In this instance, we are charging you the same fees we would charge another requestor making the same FOIA request. In the FOIA, the Legislature has balanced the public's important right to be informed about the workings of government with a public body's legitimate need to safeguard the taxpayer's resources it is entrusted to conserve.

Therefore, the Board denies your request for a waiver of the fees. The denial is based upon Section 4(1)(2)(3) of the Michigan Freedom of Information Act, MCL 15.243(1)(2)(3).

Plaintiff did not respond to the Board's written notice denying plaintiff's request for a fee waiver and did not pay the required deposit. According to Cohen's affidavit submitted with the Board's summary disposition motion, the Board "has been and remains ready to complete the processing of [plaintiff's] FOIA request upon receipt of the deposit, as it has been since issuing written notice granting [plaintiff's] FOIA request."

On April 25, 2013, plaintiff filed a two-count complaint, alleging that the Board had violated the FOIA, MCL 15.231 *et seq*. In Count I, plaintiff claimed that the Board had wrongfully denied his records request. In Count II, plaintiff claimed that the Board had imposed excessive fees to process the request. On May 16, 2013, in lieu of answering plaintiff's complaint, the Board filed a motion for summary disposition pursuant to MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted) and (C)(10) (no genuine issue of material fact). The Board argued that summary disposition on Count I was appropriate under MCR 2.116(C)(10) because there was no genuine issue of material fact that the Board had "granted" plaintiff's request; plaintiff thus did not have a cause of action under § 10 of the FOIA, which allows a requestor to commence a cause of action to compel disclosure of the requested records upon the public body's final determination denying the request, MCL 15.240(1)(b). The Board also argued that summary disposition on Count II was appropriate under MCR 2.116(C)(8). Specifically, the Board contended that § 4 of the FOIA does not recognize a cause of action and that the FOIA's remedial provisions, MCL 15.240, do not apply to a fee dispute brought under § 4.

Following a hearing on plaintiff's motion, the trial court granted summary disposition to the Board, stating:

On April 25th, 2013, Plaintiff filed a two count complaint. Count one is entitled violation of Freedom inf—of Information Act by wrongful denial of request for records under FOIA. Count two's entitled violation of the Freedom of Information Act for imposing cost in excess of FOIA requirements. Defendant moves to dismiss Plaintiff's complaint under MCR 2.116C8, failure to state a claim and MCR 2.116C10, no genuine issue of material fact and for an award of its costs, expenses and attorney fees under MCR 2.114D through F.

The Court concludes that summary disposition as to count one of the complaint is appropriate for the reason there is no genuine issue of material fact

that contrary to Plaintiff's arguments, Plaintiff's FOIA was granted. Here Plaintiff's FOIA request was granted as set forth in Defendant's response to Plaintiff's February 15th, 2013, FOIA request in a letter dated February 25, 2013, wherein it granted Plaintiff's request. Plaintiff's arguments cannot overcome this evidence. Moreover, Plaintiff responded to the February 15th, 2013, letter with a March 2nd, 2013, email stating I appreciate you granting my request; under MRE 801 section D2A, this email constitutes a party admission. Furthermore, nothing has been presented to refute the affidavit of the Defendant Board's FOIA Coordinator, therefore, count one of Plaintiff's complaint is dismissed.

Furthermore the Court grants summary disposition in favor of Defendant as to count two of the complaint, for the reason that Plaintiff has failed to state a claim. Count two concerns the imposition of fees by Defendant, however FOIA[']s remedial provisions do not apply to a dispute over fees charged under Section Four of FOIA, MCL 15.234, see *Detroit Free Press v Attorney General*[,] 271 Mich App 418; [722 NW2d 277 (2006)], therefore count two of the complaint is dismissed.

The trial court then entered an order granting the Board's motion. This appeal followed.

## II. SUMMARY DISPOSITION
### A. BACKGROUND OF THE FOIA

"The Freedom of Information Act declares that it is the public policy of this state to entitle all persons to complete information regarding governmental affairs so that they may participate fully in the democratic process." *Grebner v Clinton Charter Twp*, 216 Mich App 736, 740; 550 NW2d 265 (1996); see also *Bitterman v Village of Oakley*, ___ Mich App ___; ___ NW2d ___ (2015) (Docket No. 320984), slip op at 3-4. "[A] public body must disclose all public records that are not specifically exempt under the act." *King v Michigan State Police Dep't*, 303 Mich App 162, 176; 841 NW2d 914 (2013) (citations and quotation marks omitted); MCL 15.233(1). " 'The FOIA provides that "a person" has a right to inspect, copy, or receive the public records upon providing a written request to the FOIA coordinator of the public body.' " *King*, 303 Mich App at 175-176, quoting *Detroit Free Press, Inc v City of Southfield*, 269 Mich App 275, 290; 713 NW2d 28 (2005); MCL 15.233(1); MCL 15.235(1). "[O]nce a request under the FOIA has been made, a public body has a duty to provide access to the records sought or to release copies of those records unless the records are exempted from disclosure." *Pennington v Washtenaw Co Sheriff*, 125 Mich App 556, 564; 336 NW2d 828 (1983), citing MCL 15.233(2). Under § 5(2) of the FOIA, MCL 15.235(2), "a public body must respond to a request for a public record within five business days" by either granting the request, issuing a written notice to the requesting person denying the request, granting the request in part and issuing a written notice denying the request in part, or issuing a notice extending the response time by 10 days. MCL 15.235(2); *King*, 303 Mich App at 188. "A public body's failure to timely respond to a request under the FOIA constitutes a final determination to deny the request." *King*, 303 Mich App at 188-189, citing MCL 15.235(3); *Scharret*, 249 Mich App at 412.

Section 4 of the FOIA, MCL 15.234, grants the public body the authority to charge a fee to the requestor for a public record search, for the necessary copying of a public record for inspection, or for providing a copy of a public record, which fee is limited to "actual mailing costs, and to the actual incremental cost of duplication or publication including labor, the cost of search, examination, review, and the deletion and separation of exempt from nonexempt information. . . .". MCL 15.234(1). A public body may also require a deposit at the time a FOIA request is made equal to one-half of the total fee. MCL 15.234(2).

If a public body makes a final determination to deny a FOIA request, a party may commence an action in circuit court to compel disclosure under § 10 of the FOIA. MCL 15.235(7); MCL 15.240(1)(b). A public body's failure to timely respond to a FOIA request constitutes a final determination to deny the request. MCL 15.235(3); *King*, 303 Mich App at 188-189.

## B. SECTION 10 CLAIM

Plaintiff argues that the trial court erred in granting summary disposition to the Board on Count I, plaintiff's claim to compel disclosure of the requested records under § 10 of the FOIA. In light of recent caselaw decided after the trial court's grant of summary disposition in this case, we agree with plaintiff that the trial court erred in basing its ruling on the Board having granted plaintiff's FOIA request. However, summary disposition on this claim was nonetheless proper in light of uncontroverted evidence that plaintiff had not tendered the requested deposit, as a result of which the Board's obligation to make a final determination concerning plaintiff's request was not triggered.

> This Court's review of a trial court's grant or denial of summary disposition is de novo in order to determine whether the moving party was entitled to judgment as a matter of law. In reviewing an MCR 2.116(C)(10) motion, we are to consider all the documentary evidence in the light most favorable to the nonmoving party. A motion for summary disposition under MCR 2.116(C)(10) may properly be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [*Scharret v City of Berkley*, 249 Mich App 405, 410; 642 NW2d 685 (2002) (citations omitted).]

Further, statutory interpretation of the FOIA presents a question of law that is subject to de novo review. *Thomas v City of New Baltimore*, 254 Mich App 196, 200; 657 NW2d 530 (2002).

In this case, the Board received plaintiff's FOIA request on February 19, 2013, requesting disclosure of information related to (1) which "countermeasures have ever been in effect, or were in effect since 01/01/1996 to 02/15/2013, that authorized or authorizes MGM Grand Detroit, Greektown Casino & Hotel, and the Motorcity Casino to prevent card counters from profiting at the game of blackjack, and that is or was also approved by the Michigan [G]aming Control Board," (which plaintiff refers to as his "countermeasures request"), and (2) "any rule(s) or law(s) by the Michigan Gaming Control Board that allows MGM Grand Detroit, Greektown Casino & Hotel, and the Motorcity Casino to exclude skillful players at the game of blackjack or any other game that has ever been in effect since 01/01/1996 to 02/15/2013" (which plaintiff

refers to as his "rules request"). The Board responded within five business days, as required by the FOIA, stating that it "grants plaintiff's request for existing, non-exempt information relevant to his request." The Board also indicated that it was assessing a fee to process the request under the FOIA, and was requiring that plaintiff pay a deposit equal to one-half of the assessed fee, as authorized by MCL 15.234(2).

Plaintiff argues that the Board failed to respond to what he terms the "rules request" portion of his request. We disagree. There is no requirement under the FOIA that the public body, in responding to a request, must restate the request, in whole or in part, or specify the information sought by the requestor. Our review of the Board's response convinces us that it related to the entirety of plaintiff's request, and was not limited to the "countermeasures request" portion of his request. Although plaintiff posits on appeal that he made two "requests," plaintiff in fact denominated his "request," although comprised of two parts, in the singular, and the Board similarly responded in that fashion. Further, while the Board's response opted to quote, in part, plaintiff's request in describing the information sought, its use of ellipses within the quote is appropriately interpreted as inclusive of the entirety of plaintiff's request, including both its "countermeasures request" and "rules request" portions. Finally, the unrefuted affidavit of the Cohen indicated that she granted plaintiff's request, which she generally described "as all records regarding certain policies that are or have been in effect at the three casinos in the City of Detroit over the last 17 years regarding card counters and players skillful at the game of blackjack, as to existing, nonexempt records in its possession falling within the scope of the request." Consequently, the Board did not fail to timely respond to the "rules request" portion of plaintiff's request.

However, in light of this Court's recent decision in *King*, 303 Mich App at 189-191, we agree with plaintiff's argument on appeal that the trial court erred in dismissing plaintiff's claim on the basis that the Board had "granted" plaintiff's FOIA request. In *King*, the plaintiff submitted a FOIA request to the Michigan State Police (MSP). *Id*. at 167. The MSP responded using language almost identical to that of the Board's response in the instant case, including language indicating that the request was granted as to "existing non-exempt records" and assessing a fee and deposit based in part on estimated labor costs for "separating exempt and nonexempt material." *Id*. at 167-168, 189-190. This Court found, contrary to the MSP's position, that the response effectively constituted a partial denial of the plaintiff's request, stating:

> Defendant contends that it *granted* plaintiffs' FOIA requests and that this lawsuit was thus filed prematurely because a circuit court action may not be filed on the basis of a public body's grant of a FOIA request. We disagree with defendant's premise that it granted the FOIA requests in their entirety. A party's choice of labels is not binding on this Court. See, generally, *Norris v Lincoln Park Police Officers*, 292 Mich App 574, 582; 808 NW2d 578 (2011). In responding to Barry King's January 6, 2010, FOIA request, defendant's response letter stated: "Your request is granted as to existing, *non-exempt* records in the possession of the Michigan State Police that fall within the scope of the request." (Emphasis added.) The letter also requested a deposit based in part on estimated labor costs for "separating exempt and nonexempt material." The letter further indicated that upon receipt of the requested deposit, defendant would process the

request and notify Barry King [the requestor] of the statutory basis for the exemption of any records or portions of records. Defendant included similar language in its letter responding to Christopher King's FOIA request. Thus, although defendant contends that it granted the requests, its response letters reflect that the requests were effectively granted in part and denied in part, as the letters contemplated the separation of exempt material and thereby implicitly denied the requests with respect to such material.

It could be argued that defendant's responses did not expressly deny any portion of the requests but merely asserted the possibility that an exemption would later be asserted. In that event, however, defendant must be deemed to have failed to timely respond to the FOIA requests in their entirety by granting, denying, or granting in part and denying in part the requests. In other words, defendant granted the requests in part but failed to respond with respect to all the requested documents because the response suggested some material might be withheld as exempt but failed to state conclusively whether the response was granted or denied with respect to those potentially exempt items. A public body's failure to timely respond to a request as required by the FOIA constitutes a final determination to deny the request. MCL 15.235(3); *Scharret*, 249 Mich App at 412.

In either event, then, defendant's responses are deemed to reflect a partial denial of the FOIA requests. Therefore, plaintiffs' FOIA claims did not rest on contingent future events. *Huntington Woods*, 279 Mich App at 615-616. [*Huntington Woods v Detroit*, 279 Mich App 603, 615-616; 761 NW2d 127 (2008).] Rather, the claims were filed after defendant had effectively denied the FOIA requests with respect to potentially exempt materials. Thus, plaintiffs did not file this action prematurely.

Pursuant to *King*, the Board's response in this case similarly did not constitute a "grant" of plaintiff's FOIA request, but rather is indicative, at least preliminarily, of a partial grant and partial denial. However, we hold that the dismissal of plaintiff's claim was nonetheless proper, because the Board was not then required to make a final determination to deny all or part of plaintiff's request.

Section 4 of the FOIA, MCL 15.234, authorizes a public body to charge a fee for processing a FOIA request and delineates the nature of that authority, including that the public body may require, at the time a request is made, a good faith deposit equal to one-half of the authorized fee. *Grebner*, 216 Mich App at 740; MCL 15.234. Section 4 does not explicitly address the public body's obligations to respond under the FOIA where a requestor, as in this case, makes a request for which the public body requires a deposit before processing the request. And, read in isolation, the language of § 5(2) of the FOIA, MCL 15.235(2) states, without addressing the impact of any deposits paid or owing, that the public body must grant, deny, or grant or deny in part a FOIA request within five days of receiving it.

However, this Court "must construe the FOIA as a whole, harmonizing its provisions." *Prins v Michigan State Police*, 291 Mich App 586, 590; 805 NW2d 619 (2011). The plain and

unambiguous language of § 4(2) of the FOIA, MCL 15.234(2), provides that "[a] public body may require *at the time a request is made* a good faith deposit" from the requestor equal to one-half of the total fee authorized under § 4. MCL 15.234(2) (emphasis added). Obviously, a request must be made *before* the public body can issue a response to the request in accordance within § (5)(2), MCL 15.235(2). It logically follows that the public body's obligation to respond pursuant to MCL 15.235(2) would only arise once the requestor had paid the deposit required. This would enable the public body to recover a portion of its costs before processing the request, as is clearly contemplated by the language of § 4(2) of the FOIA.

Thus, the legislature's authorization of a public body to require a deposit, i.e., a down payment, equal to one-half of the authorized fee, "at the time a request is made" pursuant to § 4(2) of the FOIA, MCL 15.234(2), clearly contemplates that the public body recover part of these costs up front *before* processing the request. The deposit required "at the time the request is made" must therefore be made before the public body becomes obligated to process the request to enable it to formally respond with a final determination.[2] Accordingly, reading sections 4 and 5 of the FOIA together to produce a "harmonious and consistent enactment as a whole," *Prins*, 291 Mich App at 590, the statutory scheme can be reasonably construed so as to obligate the public body to respond with its final determination in accordance with § 5(2) & (4) of the FOIA, MCL 15.235, once the requestor has paid the required deposit authorized under § 4(2) of the FOIA of the fee for labor to search, examine, review, and separate and delete exempt from nonexempt information. Any other interpretation would effectively render nugatory the language "at the time the request is made" contained in § 4(2) of the FOIA, MCL 15.234(2). We must avoid such a construction. See *Badeen v Par, Inc*, 496 Mich 75, 81; 853 NW2d 303 (2014).[3]

Accordingly, we hold that a final determination by the Board is a prerequisite to plaintiff's commencement of a cause of action to compel disclosure of the requested records (and

---

[2] As defendant points out on appeal, practically speaking, a public body could not make a final determination regarding a FOIA request, as required under MCL 15.235(2) & (4), before incurring the costs for which it is statutorily authorized to require a deposit, i.e., searching, examining, reviewing, and deleting and separating exempt from nonexempt information.

[3] We note that the federal FOIA, 5 USC 552 *et seq.*, also authorizes agencies to collect processing fees "to offset the cost of fulfilling document requests." *Coleman v Drug Enforcement Administration*, 714 F3d 816, 819 (CA 4, 2013), citing 5 USC 552(a)(4). The federal fee provisions allow an agency to require advance payment of the fee before beginning to process a request if the agency determines that the fee will exceed $250. *Coleman*, 714 F3d at 819, citing 5 USC 552(a)(4)(A)(v). Notably, if the requestor refuses to prepay the fees, " 'the request shall not be considered received and further work will not be done on it until the required payment is received.' " *Coleman*, 714 F 3d at 819, quoting 28 CFR 16.11(1)(4). Although the federal fee provisions differ from the fee provisions of Michigan's FOIA, "federal law is generally instructive in FOIA cases." *Mager v Dep't of State Police*, 460 Mich 134, 144; 595 NW2d 142 (1999).

to recover attorney fees and punitive damages) under § 10 of the FOIA, MCL 15.240(1)(b), (6), (7), but is not required until plaintiff has paid the deposit required by the Board.

*King* does not compel a different result. In *King*, the plaintiff brought his cause of action *after* he paid the deposit required by the MSP, and after the MSP then failed to timely respond to his request. Once the requestor in *King* paid the required deposit, the public body was clearly obligated under the statutory scheme to process and respond to his request as provided under the FOIA, and thus, the failure to do so would constitute an actionable claim. *King*, 303 Mich App at 190; MCL 15.235(3); MCL 15.240(1)(b). Because the plaintiff in *King* paid the deposit required as authorized by § (4)(2) of the FOIA, the plaintiff's claim in *King* seeking a response to the FOIA request did not rest on a "contingent future event," i.e., the payment of the required deposit. *Id*. at 191. In this case, by contrast, plaintiff never paid the deposit and the Board's obligation to make a final determination never arose; plaintiff's claim accordingly rested on a contingent future event. It is undisputed that the Board stood ready to process plaintiff's request upon payment of the required deposit authorized under § 4(2). We therefore find, albeit for different reasons, that the trial court correctly granted summary disposition to the Board on Count I of plaintiff's complaint. See *Messenger v Ingham Co Prosecutor*, 232 Mich App 633, 643; 591 NW2d 393 (1998). ("When this Court concludes that a trial court has reached the correct result, this Court will affirm even if it does so under alternative reasoning.")[4]

## C. SECTION 4 CLAIM

Plaintiff further argues that the trial court erred in summarily dismissing Count II of his complaint, challenging the Board's assessment of fees to process his FOIA request as excessive. We agree in part.

This Court reviews de novo the trial court's ruling on a motion for summary disposition. *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint." *Id*. at 119. In deciding a motion under MCR 2.116(C)(8), a trial court may only consider the pleadings and "[a]ll well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id*. Summary disposition is appropriate if the claims are "so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992). Further, interpretation of the FOIA is a question of law that is also subject to de novo review. *Thomas*, 254 Mich App at 200.

---

[4] Plaintiff further argues for the first time in his reply brief that the Board could not charge plaintiff costs to fulfill his request because the Board has not established and published procedures and guidelines to implement the FOIA's cost provision as required pursuant to § 4(3), MCL 15.234(3). This argument was not raised before the trial court, and the record lacks sufficient factual development for this Court to disregard the preservation guidelines; we therefore decline to address it. *Fast Air, Inc v Knight*, 235 Mich App 541, 549; 599 NW2d 489 (1999); see also *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008).

"The FOIA provides that 'a person' has a right to inspect, copy, or receive the public records upon providing a written request to the FOIA coordinator of the public body" and "a public body must disclose all public records that are not specifically exempt under the act." *King*, 303 Mich App at 175-176 (citation and quotations omitted); MCL 15.233(1). As previously discussed, the public body may charge the requestor a fee for this service as set forth in § 4 of the FOIA, MCL 15.234. *Grebner*, 216 Mich App at 740. "The FOIA clearly provides a method for determining the charge for records. It is incumbent on a public body, if it chooses to exercise the legislatively granted right to charge a fee for providing a copy of the public record, to comply with the legislative directive on how to charge. The statute contemplates only a reimbursement to the public body for the cost incurred in honoring a given request—nothing more, nothing less." *Tallman*, 183 Mich App at 130. "A public body is not at liberty to simply 'choose' how much it will charge for records." *Tallman*, 183 Mich App at 130.

In this case, the Board exercised its statutory right under § 4 of the FOIA and assessed a fee to process plaintiff's FOIA request. In Count II of his complaint, plaintiff alleged a claim under § 4 of the FOIA, specifically that the Board's method of reviewing and examining more than 6,000 pages of records violates the cost provisions of § 4, MCL 15.234(3), in that "the reviewing procedure of examining more than 6,000 pages of records was utilized to needlessly increase the cost of fulfillment of the FOIA request," the procedure "was explicitly or implicitly designed to block or otherwise prevent the disclosure of simple responsive documents that would fulfill Plaintiff's request through the imposition of unlawful and unreasonable charges and costs," the request could be fulfilled by a simpler and more effective method, and the examination of 6,000 plus pages of documents is not required to fulfill the request. Plaintiff also requested that the court require the Board to fulfill his FOIA request "with simple responsive documents without the time and expense of reviewing more than 6,000 pages of irrelevant documents" and to award reasonable attorney fees, costs, and disbursements and punitive damages.

The Board moved for summary disposition of this claim under MCR 2.116(C)(8) (failure to state a claim upon which relief can be granted), arguing that the FOIA's remedial provisions under § 10, MCL 15.240, do not apply to a dispute over fees charged under § 4 of the FOIA, MCL 15.234, and thus, § 4 does not provide plaintiff with a cause of action. To support its argument, the Board relied on this Court's decision in *Detroit Free Press*, 271 Mich App at 423. The trial court, also in reliance on *Detroit Free Press*, agreed and summarily dismissed plaintiff's § 4 claim, concluding that the "FOIA[']s remedial provisions do not apply to a dispute over fees charged under Section Four of FOIA."

Contrary to the Board's argument on appeal, *Detroit Free Press* did not hold that a requestor cannot prevail in a claim brought under § 4, MCL 15.234. Instead, *Detroit Free Press* implicitly recognized that a requestor may prevail on a claim brought under § 4, MCL 15.234 (and that the plaintiff in that case had in fact done so). But, in reversing an award of attorney fee and costs, the Court held that a requestor can only recover such an award where the requestor had prevailed on a claim brought under § 10 of the FOIA, MCL 15.240(1)(b), (6), (7). *Detroit Free Press*, 271 Mich App at 423. The question squarely before us in this case is initially one assumed in *Detroit Free Press* to be answerable in the affirmative, i.e., whether a FOIA requestor may prevail on a claim under § 4, MCL 15.234, and then, in that event, what relief might be obtained, even if other than an award of attorney's fees and costs.

-11-

The statutory language of § 4 of the FOIA, MCL 15.234, does not explicitly provide for a private right of action. However, as noted, this Court has implicitly recognized a cause of action under § 4 challenging the fee assessed by the public body to process a FOIA request. See *Detroit Free Press*, 271 Mich App at 423; *Grebner*, 216 Mich App at 736. In *Grebner*, the plaintiff brought a cause of action challenging the manner in which the public body had calculated the fee charged to produce the records, allegedly in violation of § 4's cost provisions. *Id*. at 738-739. The plaintiff claimed, pursuant to the FOIA, that the public body could charge only the incremental cost of producing copies of public records. *Id*. at 739. The trial court granted summary disposition in favor of the plaintiff, ordered the public body to refund the excess fee charged, and issued a permanent injunction forbidding the defendants from charging more than incremental costs in the future. *Id*. This Court affirmed, holding that the public body was in violation of the FOIA, and remanded to determine the amount of the refund, which "would turn on [the] defendants' incremental cost in complying with [the] plaintiff[']s requests. . . ." *Id*. at 745.

Although § 4 of the FOIA, MCL 15.234, does not explicitly recognize a right of action, and although this Court in deciding *Grebner* and *Detroit Free Press* does not appear to have been directly presented with the issue of whether a cause of action under § 4 exists, we cannot ignore the fact that we are not writing on a blank slate. Clearly, *Grebner* and *Detroit Free Press* implicitly recognized such a right of action, and we are therefore not inclined to hold otherwise. See *Dana Corp v Dep't of Treasury*, 267 Mich App 690, 698; 706 NW2d 204 (2005). However, in following those cases, we emphasize the limited nature of the right of action that they implicitly recognized.

This Court may not "speculate regarding the intent [of the Legislature] beyond those words expressed in the statute." *Lash v Traverse City*, 479 Mich 180, 194; 735 NW2d 628 (2007). "[T]he relief that plaintiff seeks must be provided by the Legislature." *Id*. at 197. The Legislature explicitly permitted a cause of action under § 10 of the FOIA for damages, i.e., attorney fees and costs, as well as punitive damages, for refusing or delaying disclosure of a public record under the act, MCL 15.240(1)(b), (6), (7). Yet the Legislature provided for no such cause of action under § 4 of the FOIA, MCL 15.234. This distinction provides "persuasive evidence that the Legislature did not intend to create a private cause of action" for damages for violations of § 4 of the FOIA, MCL 15.234. *Lash*, 479 Mich at 196 n 35. We thus hold that because the FOIA does not explicitly provide for money damages or confer a remedy based on a violation of its fee provisions under § 4, as contrasted with § 10, plaintiff does not have a valid cause of action under § 4 for damages. *Id*. at 196-197; see also *Myers v City of Portage*, 304 Mich App 637, 643; 848 NW2d 200 (2014) ("Michigan caselaw holds that no cause of action can be inferred against a governmental defendant.").[5]

---

[5] By definition, the Michigan Gaming Control Board is a "governmental agency." MCL 432.240(1) states that "[t]he Michigan gaming control board is created within the department of treasury." A "governmental agency" is defined as "this state or a political subdivision." MCL 691.1401(a). "State" is defined as "this state and its agencies, departments,

However, although a cause of action cannot be inferred against a governmental defendant where a statute, like FOIA, does not explicitly provide for a cause of action for money damages or confer a remedy based on a statutory violation, injunctive or declaratory relief may still be available. *Lash*, 479 Mich at 196.

MCR 2.605(A)(1) allows the court to grant declaratory relief, and provides:

In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

MCR 3.310(A) allows for the grant of a preliminary injunction "where [a] plaintiff can make a particularized showing of irreparable harm that will occur before the merits of the claim are considered." See *Lash*, 479 Mich at 196.

In this case, plaintiff did not expressly request entry of an injunction or a declaratory order. However, plaintiff did challenge the amount of the fee charged and the process of document evaluation by which the fee was computed. Plaintiff claimed that the Board's fees were excessive given the nature of his request, and that the Board's determination that the scope and nature of his request required the identification of a substantial number (6000+) of potentially relevant documents in need of retrieval was erroneous. Thus, plaintiff essentially challenged the reasonableness of the Board's assessed fee in light of the nature of his request, which he claims should not encompass 6,000 plus documents and could be fulfilled by a simpler and more effective method. Plaintiff requested in part that the trial court order defendant to fulfill plaintiff's request "with simple responsive documents without the time and expense of reviewing more than 6,000 pages of irrelevant documents." Plaintiff further requested "all other relief that Court [sic] deems equitable and just." We deem this sufficient to constitute a request, though not explicit, for injunctive or declaratory relief. See *Mettler Walloon, LLC v Melrose Twp*, 281 Mich App 184, 221; 761 NW2d 293 (2008) (declaratory relief is an equitable remedy, not a claim); *Michigan AFSCME Council 25 v Woodhaven-Brownstown Sch Dist*, 293 Mich App 143, 145; 809 NW2d 444 (2011) (injunctive relief is an equitable remedy); see also MCR 2.601(A) (trial court may grant relief other than that explicitly demanded in pleadings).

Accepting plaintiff's allegations as true and construing them in the light most favorable to plaintiff, *Maiden*, 461 Mich at 119, we thus find that plaintiff alleged a viable claim for declaratory or injunctive relief, effectively seeking a declaration that the fees assessed violated § 4 of the FOIA, and an injunctive order prohibiting such a fee assessment. Plaintiff set forth an actual controversy challenging the assessment of fees by the Board to process his request in violation of § 4 of the FOIA. *Lash*, 479 Mich at 196 ("an 'actual controversy' exists for the purposes of a declaratory judgment where a plaintiff pleads and proves facts demonstrating an adverse interest necessitating a judgment to preserve the plaintiff's legal rights."). Plaintiff's claim for declaratory or injunctive relief thus is not "so clearly unenforceable as a matter of law

___

commissions, courts, boards, councils, and statutorily created task forces." MCL 691.1401(g). Thus, the Board is a governmental entity.

-13-

that no factual development could possibly justify a right of recovery." *Wade*, 439 Mich at 163. The trial court's award of summary disposition to defendant, under MCR 2.116(C)(8), on Count II of plaintiff's complaint was therefore erroneous.

## III. ENTRY OF PROTECTIVE ORDER

After commencing this case, plaintiff made three discovery requests that are at issue on appeal. First, plaintiff requested that the Board provide an index of records. Second, plaintiff requested, pursuant to MCR 2.310, to inspect "the process undertaken by [the Board's] staff to have identified these +6,000 records or alternatively conduct an inspection of the +6,000 records described in the response to the FOIA request. . . ." Third, plaintiff requested to depose the Board's "staffer" who determined that the 6,000 plus pages of records fell within the scope of his FOIA request and needed to be searched to fulfill the request.

The Board filed a motion for a protective order pursuant to MCR 2.302(C), asserting that such discovery should be precluded. The Board generally asserted that plaintiff was using discovery to evade paying the fee authorized and assessed under § 4 of the FOIA, MCL 15.234, to process his FOIA request, and also that the requested discovery was unnecessary and unduly burdensome because plaintiff did not have viable cause of action. Plaintiff argued in response that a claim under § 4 of the FOIA challenging the assessment of fees to the requestor is a recognized cause of action and that the requested discovery was necessary to ascertain how the Board identified the 6,000 plus records that needed to be searched to fulfill plaintiff's FOIA request and what those documents were. According to plaintiff, the Board's refusal to create an index, to permit inspection, or to permit a deposition of the custodian of the records, effectively precluded plaintiff from obtaining information needed to prosecute his § 4 claim challenging the fees assessed by the Board. After conducting a hearing, the trial court granted the Board's protective order, finding that allowing the requested discovery would be "circumventing the FOIA act." The court therefore ordered that the Board was not required to respond to plaintiff's request to create an index of records, that the Board was not required to respond to plaintiff's request for an inspection of records, unless plaintiff were to pay the fee for processing his FOIA request, and that plaintiff was not allowed take the requested deposition. Plaintiff moved for reconsideration, seeking to allow plaintiff's counsel access to the documents in accordance with *Evening News Ass'n v City of Troy*, 417 Mich 481; 339 NW2d 421 (1983). The trial court denied the motion for reconsideration.

Plaintiff argues that the trial court abused its discretion in precluding the requested discovery. We agree to the extent that the trial court precluded the requested deposition, but disagree in all other respects.

" 'This Court reviews a trial court's decision to grant or deny discovery for an abuse of discretion.' " *King*, 303 Mich App at 175, quoting *Shinkle v Shinkle (On Rehearing)*, 255 Mich App 221, 224; 663 NW2d 481 (2003). Further, this Court reviews for an abuse of discretion a trial court's decision on a motion for a protective order. *Alberto v Toyota Motor Corp*, 289 Mich App 328, 340; 796 NW2d 490 (2010). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *King*, 303 Mich App at 175. The interpretation and application of court rules is a question of law reviewed de novo on appeal. *Kernen v Homestead Development Co*, 252 Mich App 689, 692; 653 NW2d 634 (2002).

-14-

"Michigan has a broad discovery policy that permits the discovery of any matter that is not privileged and that is relevant to the pending case." *Alberto*, 289 Mich App at 336 (citations omitted). MCR 2.302 provides, in relevant part:

(B) Scope of Discovery.

(1) In General. Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of another party, including the existence, description, nature, custody, condition, and location of books, documents, other tangible things, or electronically stored information and the identity and location of persons having knowledge of a discoverable matter. It is not ground for objection that the information sought will be inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

"However, Michigan's court rules acknowledge the wisdom of placing reasonable limits on discovery." *Alberto*, 289 Mich App at 336. To that end, the court rules allow the party opposing discovery requests to move for a protective order. See MCR 2.302(C). The moving party must demonstrate good cause for the issuance of a protective order. *Id*. We address each of plaintiff's three discovery requests in turn.

## A. INDEX OF RECORDS

Plaintiff first requested that the Board compile an index to identify the nature of the over 6,000 pages of records the Board claims it must search to fulfill his FOIA request. We conclude that good cause existed to preclude this request. MCR 2.302(C). Section 3(1) of the FOIA provides that a person has a right to inspect, copy, or receive copies of the requested public record upon providing a written request sufficiently describing the record to enable the public body to find the public record. MCL 15.233(1). However, the FOIA plainly "does not require a public body to create a new public record" in order to satisfy a disclosure request, except "to the extent required by this act for the furnishing or copies, or edited copies . . . of an already existing public record." MCL 15.233(5). Thus, pursuant to § 3(5) of the FOIA, "[i]n response to an FOIA request, . . . the public body is not generally required to make a compilation, summary, or report of information, nor is it generally required to create a new public record." *City of Southfield*, 269 Mich App at 281.

In this case, plaintiff's discovery request to create an index of the records identified to be searched to fulfill his FOIA request would effectively require the Board to make a compilation or summary or effectively create a new public record. Further, the Board explained that the creation of an index would require an extensive amount of time and labor because the Board's FOIA coordinator would need to retrieve all the records, review them, assign descriptive titles, summarize their contents, and identify and separate exempt information. Essentially, in seeking an index of all responsive documents, plaintiff would cause the Board to conduct the very document review for which the Board was entitled to require an up-front deposit, without plaintiff first making that required payment. This would effectively render nugatory the requirement under FOIA that a requestor must make such a deposit, as well as our holding that a

public body is not required to make a final determination regarding a FOIA request until such time as a required deposit is paid. See *Aspey v Memorial Hosp*, 477 Mich 120, 127, 131; 730 NW2d 695 (2007). For these reasons, and because the FOIA does not obligate the Board to compile or summarize or make a new public record to fulfill a FOIA request, MCL 15.233(5); *City of Southfield*, 269 Mich App at 281, the creation of an index would cause an undue burden and expense on the Board. MCR 2.302(C). Accordingly, the trial court's decision precluding the Board from creating an index of records fell within the range of principled outcomes, and the trial court did not abuse its discretion in precluding such discovery. *King*, 303 Mich App at 175.

## B. INSPECTION OF RECORDS/INSPECTION OF PROCESS USED TO IDENTIFY RECORDS

Plaintiff also made a discovery request under MCR 2.310 to inspect the process by which the Board identified the 6000+ records it identified as responsive to his FOIA request or, in the alternative, to inspect the records themselves. The Board asserted in its motion for a protective order that such an inspection would place an unnecessary and undue burden and expense on the Board because it again would effectively require the Board to review the responsive records and redact material exempt from public disclosure without requiring the plaintiff to pay the processing fee authorized under § 4 of the FOIA, MCL 15.234. As part of its protective order, the trial court limited the requested discovery via inspection by ordering that the Board was not required to respond to plaintiff's request for an inspection of records, unless plaintiff paid the fee for processing the request for his records.

The trial court did not specifically respond to plaintiff's request "to inspect the process" utilized by the Board. Nor did plaintiff explain what it would mean to "inspect the process." However, we read the protective order's conditioning of a right to inspect the records on the payment of the required fee to also apply to plaintiff's request to "inspect the process." Further, we find that the trial court did not err in so limiting plaintiff's request.

MCR 2.310 allows a party to request another party to "permit entry on land." MCR 2.310(B)(1)(b). "Entry on land" is defined by court rule as "entry upon designated land or other property in the possession or control of the person on whom the request is served for the purpose of inspecting, measuring, surveying, photographing, testing, or sampling the property or a designated object or operation on the property, within the scope of MCR 2.302(B)." MCR 2.310(A)(2). Thus, under MCR 2.310, plaintiff could request to "inspect" an "operation on the property" and arguably seek to inspect the process of identifying the pages of records potentially responsive to its FOIA request to ascertain how the Board identified records needing to be searched. Even assuming this to be the nature of plaintiff's request, however, to fulfill this request, the Board would be required to review the responsive records and redact material exempt from public disclosure without requiring plaintiff to pay the processing fee authorized under §4 of the FOIA. Accordingly, it is not outside of the range of principled outcomes to preclude plaintiff from seeking to inspect the process utilized by the Board to identify the records without first requiring payment of the required deposit authorized under § 4(2) of the FOIA, and the trial court did not err in granting the Board's request for a protective order limiting discovery.

Plaintiff's alternative discovery request to inspect the records would likely lead to the discovery of evidence relevant to plaintiff's claim under § 4 of the FOIA (challenging the

-16-

amount of the fees assessed by the Board to process his FOIA request as resulting from an excessive number of documents identified by the Board as needing to be searched to fulfill that request). *Alberto*, 289 Mich App at 336. Under MCR 2.310(B)(1)(a)(i), a party may request that an opposing party produce and permit the requesting party, or someone acting for the requesting party, to inspect designated documents. Further, MCR 2.310(C)(6) provides, "[u]nless otherwise ordered by the court for good cause, the party producing the items for inspection shall bear the cost of assembling them and the party requesting the items shall bear any copying costs."

There was good cause, however, to limit plaintiff's request to inspect the 6000+ identified records by requiring plaintiff to pay for the cost of processing the discovery request. MCR 2.310(C)(6). In the first instance, merely granting a right to inspect all of the records would carry the risk of divulging exempt materials and thus circumvent the very aim of FOIA to balance the public's right to disclosure of public records with the right to shield some "affairs of the government from public view." *King*, 303 Mich App 162, 175-176, quoting *Herald Co, Inc v Eastern Mich Univ Bd of Regents*, 475 Mich 463, 472-473; 719 NW2d 19 (2006).

This risk could be obviated if the Board first searched the records and redacted exempt information. However, as stated above, FOIA allows the Board to charge the costs of these services to a requestor and to require a good-faith deposit. MCL 15.234. If plaintiff were not required to pay the fee assessed under § 4 of the FOIA to process plaintiff's FOIA request, the Board would experience "undue burden or expense" by plaintiff's inspection of the records identified as responsive to his FOIA request because the Board would effectively be required to process the FOIA request, i.e., search, retrieve, examine, review, and separate exempt from nonexempt information, without reimbursement of the cost from the requestor as statutorily authorized under the FOIA. MCR 2.302(C). Therefore, to protect the Board from undue burden and expense, justice requires the court's limitation on discovery making the inspection contingent on the payment of fees assessed by the Board as authorized under § 4 of the FOIA. See MCR 2.302(C)(2) (the court may order "that the discovery may be had only on specified terms and conditions"); *Alberto*, 289 Mich App at 336. Accordingly, under these circumstances, the trial court acted within its discretion in issuing an order making plaintiff's request to inspect the records contingent on the payment of the assessed fee. *King*, 303 Mich App at 175.

## C. DEPOSITION OF FOIA COORDINATOR

Finally, plaintiff sought to depose the "staffer" who determined the "global document set" that the Board indicated it needs review to fulfill plaintiff's FOIA request. The Board argued that a request for deposition of the FOIA Coordinator, who processed plaintiff's request, places an unnecessary and undue burden and expense on the Board because there is no dispute that plaintiff does not have a claim upon which relief can be granted. The trial court ordered that plaintiff not be allowed to take the requested deposition.

As noted in part III of this opinion, however, plaintiff has an actionable claim for declaratory or injunctive relief under § 4 of the FOIA, MCL 15.234, challenging the Board's assessment of fees to process his request as excessive due to the scope of records identified by the Board as needing to be searched. Accordingly, conducting a deposition, pursuant to MCR 2.306, of the person who made the determination in question, about the process/methodology used to determine the document set responsive to plaintiff's FOIA request,

would likely lead to the discovery of admissible evidence on a matter that is relevant to plaintiff's § 4 claim. MCR 2.302(B)(1). Further, a deposition would provide a limited means of ascertaining how the Board identified the 6,000+ responsive records, and in general what comprised those records, without causing the Board to incur the undue burden associated with effectively having to process plaintiff's FOIA request without reimbursement of the processing costs. It cannot be said that the deposition alone would place an undue burden or expense on the Board. MCR 2.032(C). Under these circumstances, the trial court abused its discretion in precluding plaintiff from deposing the FOIA Coordinator or staffer who identified the scope of the records that need to be searched to fulfill plaintiff's FOIA request. *King*, 303 Mich App at 175.

## D. *IN CAMERA* REVIEW

In his motion for reconsideration of the trial court's protective order precluding discovery, plaintiff requested that his counsel be allowed to inspect the requested records *in camera* in accordance with *Evening News*. This issue is not properly preserved for review. *King v Oakland Co Prosecutor*, 303 Mich App 222, 239; 842 NW2d 403 (2013) (quotations and citation omitted) ("Where an issue is first presented in a motion for reconsideration, it is not properly preserved."). Regardless, we do not find an *in camera* inspection by plaintiff's counsel to be warranted.

*Evening News* is not applicable to this case. *Evening News* concerned the assertion of a FOIA exemption and the resulting "procedural difficulties that inhere in determining whether a FOIA exemption applies in light of the asserted confidentiality of the information contained in the requested documents." *King*, 303 Mich App at 228, citing *Evening News*, 417 Mich at 514. By contrast, the issue in this case concerns the scope of the records that the Board identified as responsive, which identification resulted in allegedly excessive fees to process plaintiff's FOIA request. Thus, the procedure set forth in *Evening News*, of allowing the plaintiff's counsel to view information *in camera* in order to challenge the assertion of an exemption, is not applicable here. Moreover, allowing plaintiff's counsel to view the responsive documents *in camera* would again require the Board to effectively process plaintiff's FOIA request, i.e., by searching and retrieving the information, without receipt of the required fee assessed under § 4 of the FOIA (which as previously discussed would result in undue burden and expense for the Board), and would either cause exempt materials to be divulged or cause the Board to incur the additional expense of ascertaining and redacting exempt materials without the required payment.

## V. APPELLATE ATTORNEY FEES

Finally, plaintiff argues that he is entitled to recover appellate attorney fees under § 10(6) of the FOIA, MCL 15.240(6), if he prevails on remand and that this Court should order the trial court award all attorney fees and costs incurred in this appeal in that event. We disagree. The proper interpretation of the FOIA is a question of law that is subject to de novo review. *Thomas*, 254 Mich App at 200.

In support of his argument, plaintiff cites *Rataj v City of Romulus*, ___ Mich App ___, ___; ___ NW2d ___ (2014) (Docket No. 315669); slip op at 9. In *Rataj*, this Court determined that the public body had wrongfully denied the plaintiff's FOIA request, in part, and held that the

trial court had erred in declining to order the disclosure of certain requested records. *Id.* Concluding that the legal action, and particularly the appeal to this Court, was necessary in that case to compel disclosure of the requested information, and that the plaintiff had prevailed in part, this Court held that the plaintiff was entitled to reasonable attorney fees, costs, and disbursements incurred by the plaintiff, "including the attorney fees necessitated by [the] appeal." *Id.* at 10. Thus, as plaintiff argues on appeal in this case, a requestor potentially could recover attorney fees related to an appeal if he prevails in an action commenced under § 10 of the FOIA, MCL 15.240(6). *Id.*

In this case, however, plaintiff did not prevail on his claim under § 10 of the FOIA, because the trial court's dismissal of Count I of his complaint was appropriate due to his failure to pay the required deposit authorized under § 4(2) of the FOIA. In light of plaintiff's nonpayment, a lawsuit was not reasonably necessary to compel the disclosure of the required documents, and thus, plaintiff could not maintain an action for damages under § 10 of the FOIA. Accordingly, and consistent with *Rataj*, we decline to award attorney fees pursuant to § 10(6) of the FOIA.

## VI. CONCLUSION

We affirm the trial court's dismissal of Count I of plaintiff's complaint, but reverse the dismissal of Count II of plaintiff's complaint insofar as it seeks declaratory or injunctive relief. We reverse that portion of the trial court's protective order that pertains to the requested deposition, and otherwise affirm that order. We decline to order the trial court to award appellate attorney fees if plaintiff is successful on remand, and remand for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Jane M. Beckering